Filed 2/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GEORGE SOULIOTES, | B295163 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS170608) |
| v. | |
| CALIFORNIA VICTIM COMPENSATION BOARD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

McLane, Bednarski & Litt, Marilyn E. Bednarski, David S. McLane and Caitlin S. Weisberg for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Defendant and Respondent.

California law provides that if a person has been imprisoned or incarcerated for a crime, and that crime "was either not committed at all or, if committed, was not committed by him or her," he or she may present a claim for compensation against the state to the California Victim Compensation Board (the Board) for the injury he or she sustained by reason of the erroneous imprisonment or incarceration. (Pen. Code,[1] § 4900.)  The Board must hold a hearing on the claim unless (as relevant here) a court has granted a writ of habeas corpus and "has found that the person is factually innocent," in which case that finding is binding on the Board and the Board must, without a hearing, recommend to the Legislature that the claim be paid.  (§ 1485.55, subd. (a), see also § 4902, subd. (a).)  If a court has granted a writ of habeas corpus but did not make a finding of factual innocence, "the factual findings and credibility determinations establishing the court's basis for granting a writ of habeas corpus" are binding on the Board.  (§ 4903, subd. (b); see also § 1485.5, subds. (c), (d).)

Under federal law, a petitioner for writ of habeas corpus seeking to overcome a procedural bar (such as the statute of limitations) to federal habeas review of the merits of his or her constitutional claims must pass through an "actual innocence" gateway first applied in *Schlup v. Delo* (1995) 513 U.S. 298 (*Schlup*).  To pass through that gateway (the *Schlup* gateway), the petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting

---

[1]     Further undesignated statutory references are to the Penal Code.

2

reasonably, would have voted to find him guilty beyond a reasonable doubt." (*Id.* at p. 329; accord, *McQuiggin v. Perkins* (2013) 569 U.S. 383, 386 (*McQuiggin*).) If the petitioner is successful, only then may the district court consider the merits of the constitutional claims raised in the habeas petition. (*Herrera v. Collins* (1993) 506 U.S. 390, 404-405; *McQuiggin*, *supra*, 569 U.S. at p. 392.)

In this appeal we address two questions relating to the effect of *Schlup* gateway findings on claims for compensation under section 4900. First, is a district court's *Schlup* gateway finding of "actual innocence" necessarily equivalent to a finding that the person is "factually innocent" under section 1485.55, subdivision (a) (hereafter section 1485.55(a)), thus requiring the Board to recommend payment of that person's claim without a hearing? Second, are the factual findings and credibility determinations made by the district court in determining that the habeas petitioner could pass through the *Schlup* gateway necessarily binding on the Board in a hearing on a section 4900 claim?

We conclude, as did the trial court, that the answer to both questions is "No." Although the terms "actual innocence" and "factual innocence" often are used interchangeably, the standard used by the federal court to find "actual innocence" under *Schlup* is not equivalent to the standard used by the California Legislature in defining "factual innocence." And, the language of sections 4309, subdivision (b) (section 4309(b)), and 1485.5, subdivisions (c) and (d) (section 1485.5(c) and section 1485.5(d)), make clear that only those factual findings and

3

credibility determinations relied upon by the district court to grant the writ of habeas corpus—as opposed to allowing the petitioner to pass through the *Schlup* gateway—are binding on the Board. Accordingly, we affirm the judgment.

# BACKGROUND

## A. *Souliotes's Conviction*

George Souliotes was convicted of arson-murder and sentenced to life without the possibility of parole after a mother and two children died in a fire at a rental property that Souliotes owned. At trial, the case against Souliotes rested primarily on three sources. First, fire investigators testified that, based on several factors, there was no doubt the fire was caused by arson. Second, a criminalist testified that medium petroleum distillates (MPDs), which are flammable compounds that could be used to start a fire, were found on samples taken from the scene of the fire as well as on Souliotes's shoes; the prosecutor argued that the presence of MPDs both at the scene and on Souliotes's shoes was unusual and that this was conclusive scientific evidence that Souliotes started the fire. Third, an eyewitness, Monica Sandoval, testified that she saw from the balcony of her nearby apartment a motorhome or recreational vehicle (an RV) drive back and forth past the Souliotes rental house several times in the hours before the fire began. The RV eventually stopped across from the rental house, and the driver got out and walked to the house carrying a white sack, then returned to the RV without the sack; a few minutes later, the house was on fire.

4

She later identified Souliotes as the driver, and Souliotes's RV as the one she had seen.[2]

B.    *The Federal Habeas Petition*

Five years after Souliotes was convicted he obtained new evidence that established, using a scientific method not previously available, that the MPDs found on his shoes was chemically distinguishable from the MPDs found at the scene of the fire, which established that the MPDs came from different sources.[3]  Souliotes filed habeas petitions in state and federal courts based on this new evidence.  The federal petition, which was filed in May 2006, originally was denied on the ground it was filed beyond the statute of limitations set forth in 28 U.S.C. section 2244(d), part of the Antiterrorism and Effective Death Penalty Act of

---

[2]    We note that Souliotes was tried twice.  The prosecution presented virtually the same evidence at both trials.  Defense counsel presented several witnesses at the first trial, including (1) experts in mechanical engineering, forensics, and fire investigation to contest the prosecution's fire investigators' and criminalist's testimony; (2) a psychologist to testify about problems with eyewitness testimony; and (3) lay witnesses to undermine the prosecutor's theories that Souliotes had a financial motive to commit arson and that he bore ill-will toward the victims.  The jury in that first trial could not reach a verdict after three days of deliberations.  At the second trial, although defense counsel told the jury in his opening statement that he would be presenting those witnesses, he did not do so, and rested after the prosecution closed its case-in-chief.  The jury reached a guilty verdict on all counts after only a few hours of deliberation.

[3]    At the time of Souliotes's trial, the MPDs from the shoes could not be excluded as having come from the same source of MPDs found at the fire scene.  The Attorney General ultimately stipulated that the MPDs did not originate from a common source.

5

1996 (the AEDPA). (Pub.L. No. 104-132 (Apr. 24, 1996) 110 Stat. 1214, 1217.) Souliotes appealed. For reasons that are not relevant to the issues in this appeal, the Ninth Circuit Court of Appeals did not reverse and direct the district court to conduct a *Schlup* gateway hearing until August 2011.

1. *The Schlup Gateway Ruling*

By the time of the *Schlup* gateway hearing there had been significant advances in fire science, and many of the factors the prosecution's fire investigators had relied upon to prove arson were found not to be indicators of arson. Thus, the Attorney General stipulated that it was not possible to determine the cause of the fire, and that experts could not determine whether the fire was caused by accident or arson.

The *Schlup* gateway hearing was held before a magistrate judge, who reviewed the evidence that had been presented at trial as well as party stipulations and additional evidence presented by both sides, and issued detailed findings, including credibility determinations. The magistrate judge noted that, given the parties' stipulations that the experts could not determine if the fire was arson and that the MPDs found on Souliotes's shoes were distinct from the MPDs found at the fire, "the principal remaining evidence of [Souliotes's] guilt" was Sandoval's testimony that identified Souliotes as the person who exited the RV and went to the house just before the fire started. The magistrate judge, however, found that Sandoval's identification of Souliotes was "wholly unreliable" based upon a number of factors,

6

including that (1) she only saw the lower portion of the RV driver's face from a great distance, under poor lighting conditions,[4] and through the windshield; (2) her initial description of the driver's age and facial characteristics did not match Souliotes and changed over time; and (3) she identified Souliotes as the driver only after she had been unable to identify him in a photograph on the morning of the fire, had been shown a photographic lineup with his photo in it, had seen at least one newspaper photo of him identified as the arson suspect, and saw him sitting in court in a red jail jumpsuit next to defense counsel (she finally identified him after a break in court proceedings, during which she may have spoken with the prosecutor, "who then unexpectedly reopened his questioning of her to ask if she could then make the never-before-possible identification"). The magistrate judge also found that Sandoval's identification of Souliotes's RV as the one she had seen just before the fire also suffered from infirmities that impacted its credibility, such as that (1) Sandoval initially described the RV as a Dodge Caravan, while Souliotes's RV was a Winnebago that had a blue "W" on it;[5] (2) many of the distinctive features Sandoval described (such as a ladder and a white curtain on the rear window) were not present on Souliotes's RV, while certain features that she had said were not on

---

[4]    Sandoval's observations took place between 1:00 a.m. to 3:30 a.m. on a cold misty night.

[5]    On the morning of the fire, the police took Sandoval to an RV sales lot to look for an RV that looked similar to the one she had observed. Although there were several RVs with a "W" there, Sandoval did not mention that the RV she had seen also had a "W" on it.

7

the suspect RV (such as a spare tire and an air conditioner on the roof) were on Souliotes's RV; (3) Sandoval did not identify the RV when she was brought by police officers to Souliotes's home to look at his RV right after she was interviewed the morning of the fire, but she subsequently identified it when the police brought her back to Souliotes's home a short time later, when there were several police cars at the home.

The magistrate judge then examined the remaining circumstantial evidence of Souliotes's guilt and found it "flawed" and "provid[ing] little support for a finding of guilt." That evidence included evidence that the tenants of the rental property had not timely vacated the premises following eviction proceedings, which the prosecutor suggested angered Souliotes and drove him to destroy the property and kill the tenants, including the two young children. But the magistrate judge noted that this theory made no sense in that Souliotes had voluntarily allowed the tenants to remain past the eviction date so as not to disturb their Christmas and New Year's holidays, he had no financial rationale for destroying the house (he had a prospective buyer lined up at the time of the fire), and there was no evidence that Souliotes was insane, unintelligent, or irrational.[6]

The magistrate judge concluded: "Ultimately then, [Souliotes's] guilt hinges largely on the credibility of Sandoval's identification of [Souliotes's] RV. The evidence might cause one to hesitate before

---

[6] The magistrate judge also noted that other circumstantial evidence was inconsistent with guilt, such as evidence that the engine of Souliotes's RV was cold to the touch shortly after the fire.

8

concluding there was no possibility [Souliotes] committed this crime. It is, however, not necessary that the evidence conclusively exonerate him. The test is whether any reasonable juror properly instructed and conscientiously following these instruction[s] would be more likely than not to find [Souliotes] guilty beyond a reasonable doubt. [Citations.] [¶] For all the reasons set forth above, the Court answers the latter question in the negative. The evidence remaining after the scientific evidence was removed is so weak it is insufficient to support a finding of [Souliotes's] guilt beyond a reasonable doubt. [Souliotes's] showing of innocence leaves this Court without confidence in the outcome of [Souliotes's] trial. [Citation.] The Court concludes [Souliotes] should pass th[r]ough the Schlup gateway."

The district court conducted a de novo review of the case and adopted the magistrate judge's findings and recommendations. The court found that Souliotes "has made a sufficient showing of actual innocence to serve as an exception to the AEDPA's one year statute of limitations and is entitled to pass through the Schlup gateway and present the merits of his underlying claims."

2. *Merits of the Habeas Petition and Souliotes's Release*

The magistrate judge then turned to the merits of Souliotes's habeas claims. Souliotes raised seven claims: (1) he is actually innocent and entitled to relief; (2) his trial counsel was ineffective in failing to present a fire expert in his defense; (3) his trial counsel was ineffective in failing to present additional witnesses in his defense; (4) his trial counsel was ineffective in failing to cross-examine the

9

prosecution's fire experts using a widely accepted guide in the field of fire investigation; (5) the jurors committed misconduct in considering extrinsic information during deliberation; (6) his due process rights were violated by the use of fundamentally unreliable expert testimony and evidence; and (7) cumulative error. In his findings and recommendation regarding Souliotes's habeas petition, the magistrate judge analyzed in detail the evidence presented at the first and second trials and found that Souliotes was prejudiced by his trial counsel's unprofessional conduct in the second trial that resulted in the guilty verdict. Therefore, the magistrate judge found that Souliotes was entitled to relief as to claims two, three, and seven. In light of this finding, the magistrate judge concluded that a determination of Souliotes's remaining claims (including his claim of innocence) was unnecessary, and reserved judgment on those claims.

The district court conducted a de novo review and adopted the magistrate judge's findings and recommendation, with minor modifications. The court granted the habeas petition as to claims two, three, and seven, and ordered that Souliotes be released unless the State of California notified the court that it intended to retry him and commenced retrial within 90 days.

The District Attorney for Stanislaus County notified the district court that her office intended to retry Souliotes. A short time later, the parties reached a plea agreement. Under that agreement, Souliotes

would enter a *West/Alford*[7] plea of no contest to three counts of involuntary manslaughter and would receive a total sentence of six years; with credit for time served (over 16 years[8]), he would immediately be released from custody. As factual basis for the plea, the parties stipulated that, as the owner of the rental property, Souliotes had a duty to have an operable smoke alarm in the property; because there was a fire at the property that resulted in the deaths of three occupants, there was a factual basis to conclude that Souliotes did not have an operable smoke detector in the property and as a result of his negligent maintenance of the property, three occupants died.

C.     *Souliotes's Section 4900 Claim*

Souliotes filed a claim for compensation under section 4900 as an erroneously-convicted person. After a two-day hearing, the hearing officer issued a 63-page proposed decision, ultimately concluding there was a preponderance of evidence that the fire was not caused by arson, and there was not a preponderance of evidence that if arson was committed it was committed by Souliotes.[9] Therefore, the hearing

---

[7]     *People v. West* (1970) 3 Cal.3d 595; *North Carolina v. Alford* (1970) 400 U.S. 25.

[8]     Souliotes was incarcerated from the date of the fire (Jan. 15, 1997) until July 3, 2013.

[9]     The hearing officer also found there was not a preponderance of the evidence that Souliotes committed involuntary manslaughter due to a failure to maintain smoke detectors at the property. The officer noted there was no evidence of such a failure, that the property was a certified Section 8 house

11

officer recommended approval of Souliotes's claim and found he was entitled to $841,820 in compensation.

The Board rejected the proposed decision, providing a single paragraph of purported findings without any citation to the evidence presented (over 16,000 pages). The sole basis for the Board's rejection of the hearing officer's recommendation was a statement by Board member Ramos (one of the two Board members in attendance) that: (1) "we cannot say how the fire started, which means we cannot rule out arson"; (2) neither the Board, the hearing officer, nor the magistrate judge saw Sandoval testify, and therefore the Board could not determine whether she was credible; and (3) "You got two babies and mother that . . . lost their lives." He concluded that, "tak[ing] all those factors into consideration," the Board felt that Souliotes's claim should be denied.

D.    *Souliotes's Petition in the Superior Court*

Souliotes filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) and writ of mandate (Code Civ. Proc., § 1085) in the superior court. He argued, among other things, that (1) the *Schlup* gateway finding is a factual innocence finding under Penal Code section 1485.55(a), which requires the Board to find, without a hearing,

---

and Section 8 would not have allowed him to rent the property without working smoke detectors, and that the surviving tenant of the property testified at a civil hearing that there was a working smoke detector at the home (the tenant, however, had wanted to add more, and Souliotes agreed that he could do so).

he is entitled to compensation; (2) Penal Code sections 1485.5(c) and 4903(b) require the Board to accept as binding the factual findings and credibility determinations made by the federal court in the habeas proceedings, which includes the *Schlup* gateway proceedings; and (3) the Board's decision was not supported by adequate findings. He asked the court to issue a peremptory writ of mandate directing the Board to set aside its decision and issue a decision approving his claim or, in the alternative, to issue a peremptory writ of mandate directing the Board to set aside its decision and conduct further proceedings.

The trial court issued a tentative decision before the hearing on the writ petition in which it found that the *Schlup* gateway finding did not constitute a finding of factual innocence under Penal Code section 1485.55(a), and therefore the Board did not have a ministerial duty to grant his request for compensation (Code Civ. Proc., § 1085). The court also found that the Board is bound by the "express factual findings" and credibility determinations relied upon by the federal court to grant the writ of habeas corpus, but not those relied upon by the federal court solely for the *Schlup* gateway finding. Finally, the court found that the Board failed to support its decision with sufficient findings supported by evidence, as required by *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506. Therefore, the court indicated it would grant in part the petition, and that it would issue a writ of mandate directing the Board to set aside its decision and, without a further evidentiary hearing, to issue a new decision that includes the requisite findings.

13

After hearing argument from counsel, the court announced it was going to adopt its tentative decision as its final decision. It told counsel that it could send the matter back to the Board either as an interim order or as a writ of mandate. The court said that if counsel wanted to get the issue regarding the effect of the *Schlup* gateway ruling to the court of appeal, since it was a matter of first impression, the court could issue a judgment writ. Counsel for Souliotes asked the court to issue a final judgment.

The court subsequently entered a judgment (prepared by Souliotes's counsel) stating that the petition was granted in part and denied in part as follows: (1) the claim that the Board abused its discretion because its decision was not supported by factual findings was granted; (2) the claim that the Board disregarded governing law and abused its discretion by failing to accept as binding the factual findings and credibility determinations made by the federal court was granted in part; (3) the claim that the Board disregarded governing law and abused its discretion by failing to approve Souliotes's claim as required by sections 1485.55(a) and 4902, subdivision (a) (section 4902(a)) was denied; and (4) the claim that the Board disregarded governing law, abused its discretion, and denied Souliotes a fair hearing by allowing the Attorney General to participate in the administrative proceedings was denied. In light of its ruling that the Board abused its discretion because its decision was not supported by factual findings, the court declined to rule on Souliotes's claim that the Board's findings were not supported by the evidence. The judgment directed that a writ be issued remanding the proceedings to the Board and commanding it

14

to (1) set aside its decision; (2) "reconsider its action in the light of this Court's Statement of Decision and this Judgment and to take any further action specially enjoined on it by law; but nothing in this Judgment or in that writ shall limit or control in any way the discretion legally vested in [the Board]"; and (3) determine, consistent with the statement of decision and with statutory and case law, whether any factual findings and credibility determinations made by the federal district court in considering Souliotes's habeas petition are binding on the Board and the precise effect of those findings.

Souliotes timely filed a notice of appeal "from the portions of the Judgment . . . which denied, in whole or in part, Petitioner's claims for relief."

## DISCUSSION

Souliotes raises three issues on appeal. First, he contends the trial court erred by finding that the Board was not required, under sections 1485.55(a) and 4902(a), to automatically grant him compensation as a result of the federal district court's *Schlup* gateway finding. Second, he contends the court erred in ruling that the factual findings and credibility determinations made by the federal court in its *Schlup* gateway ruling are not binding on the Board. Third, he contends the Attorney General's stipulations and the federal court's binding factual findings and credibility determinations require the Board to find he is factually innocent of the crimes for which he was incarcerated. We conclude the trial court did not err with respect to the first two issues, and that the third issue is not ripe for appeal.

15

A.    *Appealability*

Upon our initial review of this case, including the issues Souliotes raises in his appellant's opening brief and the Attorney General's responses, we questioned whether Souliotes's appeal was proper given that the trial court had granted Souliotes's primary request for relief (the setting aside of the Board's decision) and remanded the matter with directions to the Board to reconsider its decision, and the issues Souliotes raises could be subject to review in an appeal following the reconsidered decision.  We asked the parties to submit supplemental briefing addressing whether the judgment in this case was a final appealable judgment.  Having considered those supplemental briefs, we conclude that only the first two issues Souliotes raises are appropriate for review.

"Under the one final judgment rule, "'an appeal may be taken only from the final judgment in an entire action.'"  [Citation.]  "'The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.'"  [Citations.]  [¶]  The one final judgment rule is 'a fundamental principle of appellate practice [citation], recognized and enforced in this state since the 19th century." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756.)

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal.  A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable

16

by Code of Civil Procedure section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

In *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109 (*Dhillon*), the Supreme Court examined whether an order granting a petition for writ of administrative mandamus and remanding the matter for proceedings before the administrative body was appealable by the party opposing the petition. The dispute in *Dhillon* involved a disciplinary action by the operator of two hospitals (John Muir) against a physician. After appointing an ad hoc committee to investigate a complaint lodged against the physician and receiving the committee's report, John Muir's joint medical executive committee imposed certain disciplinary measures. The physician requested a hearing with John Muir's judicial review committee (the JRC), but John Muir responded that he was not entitled to such a hearing. The physician filed a petition for writ of administrative mandamus, asking the trial court to order a hearing before the JRC or other appropriate body, to direct John Muir to vacate its imposition of discipline, and for certain other relief. The trial court granted the petition in part, finding that John Muir's bylaws entitled the physician to a hearing before the JRC or another appropriate body, and that the physician was deprived of due process when John Muir suspended his clinical privileges without providing him a hearing. The court issued a peremptory writ directing John Muir to conduct a hearing, and denied the petition in all other respects. (*Dhillon, supra,* 2 Cal.5th at pp. 1112-1113.)

John Muir appealed, and also filed a petition for writ of mandate and/or prohibition. The court of appeal summarily denied the writ

17

petition and, after requesting briefing on the issue of appealability, the court dismissed the appeal on the grounds the trial court's order was not a final appealable order, nor was the order and judgment appealable as a final determination of a collateral matter. (*Dhillon*, *supra*, 2 Cal.5th at p. 1113.)

In reversing the appellate court, the Supreme Court noted the "long-standing conflict" among courts of appeal "concerning the appealability of a trial court's order, on a petition for writ of administrative mandamus, remanding the matter for further proceedings before the administrative body." (*Dhillon, supra*, 2 Cal.5th at p. 1113.) Although the Supreme Court did not "undertake to answer 'the broad question whether remands to administrative agencies are always immediately appealable,'" it concluded that the order at issue was an appealable final judgment based upon certain considerations present in the case before it. (*Id.* at p. 1116.) First, in its order, the trial court either granted or denied each of the physician's claims. Second, the court did not reserve jurisdiction to consider any issues. Third, as a practical matter, unless John Muir had a right of immediate appeal, the trial court's interpretation of its bylaws (i.e., that the bylaws required a hearing before the JRC or other appropriate body) may evade review. The Court noted that if the physician prevailed at the JRC hearing, the bylaws provided for an internal appellate process in which the internal appeal board could not overrule the trial court's ruling, and if the JRC decided against the physician, John Muir could not seek review because it would not have been aggrieved by the ruling.

The Supreme Court emphasized that "practical unreviewability is a relevant consideration in determining whether a remand order is a final and appealable judgment." (*Dhillon*, *supra*, 2 Cal.5th at p. 1118, fn. 4.) The court observed that "[t]his practical consideration distinguishes this case from *Kumar* [*v. National Medical Enterprises, Inc.* (1990)] 218 Cal.App.3d 1050." (*Dhillon*, *supra*, 2 Cal.5th at p. 1118, fn. 4.) As the Supreme Court described that case: "In *Kumar*, as in this case, a doctor challenged the suspension of his hospital privileges in a petition for writ of administrative mandamus, and the trial court granted the petition in part: It set aside the decision by the hospital's governing board upholding the doctor's suspension and remanded the matter for further administrative proceedings, but it did not reinstate the doctor's privileges. The doctor appealed. The Court of Appeal dismissed the appeal, holding that the judgment was not appealable because the doctor was first required to exhaust his administrative remedies. [Citation.] But the doctor in *Kumar*, unlike John Muir, would have had a later opportunity to raise an appellate challenge to the hospital's discipline if he did not prevail in the administrative hearing: He could file a second petition for administrative mandamus, and if the trial court ruled against him, he could appeal from the denial of his petition. Here, John Muir has no comparable guarantee of future opportunities to raise its challenge to the trial court's conclusion that its bylaws require it to hold a JRC hearing before imposing disciplinary measures. Thus, whether or not *Kumar* was correctly decided (a

19

question we need not decide here), it is distinguishable on its facts."[10] (*Dhillon*, *supra*, 2 Cal.5th at p. 1118, fn. 4.)

In the present case, the trial court's order (1) granted or denied each of Souliotes's claims and (2) did not reserve jurisdiction to consider any issues. However, the order includes some rulings that fall on the *Dhillon* side of "practical unreviewability" and other rulings that fall on the *Kumar* side of having "a later opportunity to raise an appellate challenge to [the Board's decision] if he did not prevail in the administrative hearing." (*Dhillon*, *supra*, 2 Cal.5th at p. 1118, fn. 4.)

For example, the trial court's ruling that the federal district court's *Schlup* gateway ruling did not require the Board to grant Souliotes's compensation claim without a hearing under sections 1485.55(a) and 4902(a) is, like the ruling in *Dhillon*, practically unreviewable. This is because the purpose of sections 1485.55(a) and 4902(a) is to provide immediate compensation without a hearing where the claimant has been found by a court to be "factually innocent," and that purpose would be thwarted (assuming Souliotes's assertion of error was correct) if his appeal was not heard until after two hearings and a writ proceeding were held. Thus, we conclude that the trial court's order denying Souliotes's claim on this issue is appealable.

---

[10] We suggest there was an additional basis for distinguishing *Kumar*. In that case, as in this case, the trial court granted the primary relief sought by the appealing party—i.e., setting aside the challenged decision—whereas in *Dhillon*, the trial court ruled against the appealing party.

In contrast, the trial court's order declining to rule on Souliotes's claim that the binding factual findings made by the habeas court and stipulations by the Attorney General require the Board to find he is entitled to compensation is, like the ruling in *Kumar*, eminently reviewable in a subsequent appeal (if an appeal is necessary). In fact, since neither the Board nor the trial court (nor the parties) has specified exactly what the relevant factual findings are, if the Board is bound only by those findings relied upon by the habeas court in granting Souliotes's habeas petition (as we conclude, *post*), review of Souliotes's claim necessarily must wait for the Board's decision on remand. In other words, the trial court's order on this issue is not ripe for appeal.

The trial court's order on the remaining issue Souliotes raises on appeal—that only those express findings relied upon by the habeas court in granting Souliotes's habeas petition are binding on the Board— falls somewhere between the practical unreviewability of *Dhillon* and the reviewable after the Board's decision on remand of *Kumar*. If on remand the Board once again denied Souliotes's compensation claim while adhering to the trial court's ruling, Souliotes would not be precluded from arguing in a subsequent appeal that under sections 4903(b), 1485.5(c) and 1485.5(d) the Board also is bound by the findings made by the habeas court in making its *Schlup* gateway finding. However, because this order raises a pure question of law, and resolving it now could avoid further appeals, we will address it in this appeal.

21

B.     *Is a Schlup Gateway Finding a Finding of "Factual Innocence"*
       *Under Section 1485.55(a) Such That the Board is Required to*
       *Recommend Granting a Section 4900 Claim Without a Hearing?*

Under section 4902(a), "[i]f the provisions of Section 851.865 or 1485.55 apply in any claim [for compensation for erroneous conviction under § 4900], the California Victim Compensation Board shall, within 30 days of the presentation of the claim, calculate the compensation for the claimant pursuant to Section 4904 and recommend to the Legislature payment of that sum." Section 1485.55 is a provision under the chapter of the Penal Code that addresses writs of habeas corpus.[11] Currently, subdivision (a) of that statute provides: "(a) In a contested proceeding, if the court has granted a writ of habeas corpus or when, pursuant to Section 1473.6, the court vacates a judgment, and if the court has found that the person is factually innocent, that finding shall be binding on the California Victim Compensation Board for a claim presented to the board, and upon application by the person, the board shall, without a hearing, recommend to the Legislature that an appropriation be made and the claim paid pursuant to Section 4904."[12]

---

[11]     Section 851.865 relates to declarations of factual innocence under section 851.8 and 851.86, and is not relevant to this case.

[12]     Although Souliotes relies only upon subdivision (a), other subdivisions of section 1485.55 are relevant to the interpretation of "factually innocent." Therefore, we set forth those subdivisions (as currently in effect):
     "(b) In a contested or uncontested proceeding, if the court has granted a writ of habeas corpus or vacated a judgment pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, the person may move for a finding of factual innocence by a preponderance of the evidence that the

22

Souliotes contends that he satisfied all three requirements of section 1485.55(a)—(1) a contested proceeding was held on his habeas petition, (2) the habeas court granted a writ of habeas corpus, and (3) the habeas court found that he was factually innocent by making its *Schlup* gateway finding—and therefore the trial court erred by not directing the Board to grant his section 4900 claim without a hearing. Whether Souliotes is correct turns on the meaning of "factually innocent" as used in section 1485.55(a), and whether that meaning is the same as the meaning of "actual innocence" as used in a *Schlup* gateway finding.

1.     *"Actual Innocence"*

We begin with the meaning of "actual innocence" as used in a *Schlup* gateway finding.  In *Schlup*, the United States Supreme Court addressed the kind of showing of "actual innocence" that must be made

---

crime with which they were charged was either not committed at all or, if committed, was not committed by the petitioner.

"(c)  If the court makes a finding that the petitioner has proven their factual innocence by a preponderance of the evidence pursuant to subdivision (b), the board shall, without a hearing, recommend to the Legislature that an appropriation be made and any claim filed shall be paid pursuant to Section 4904.  [¶]  . . . [¶]

"(e)  If a federal court, after granting a writ of habeas corpus, pursuant to a nonstatutory motion or request, finds a petitioner factually innocent by no less than a preponderance of the evidence that the crime with which they were charged was either not committed at all or, if committed, was not committed by the petitioner, the board shall, without a hearing, recommend to the Legislature that an appropriation be made and any claim shall be paid pursuant to Section 4904."

23

to allow a habeas petitioner to overcome a procedural bar to having his or her habeas petition heard on the merits. (*Schlup*, *supra*, 513 U.S. 298, 301.) The Court began by noting the difference between a claim of actual innocence for purposes of allowing a habeas petition to be heard on the merits and a constitutional claim of actual innocence (i.e., a claim that even if the petitioner's trial was fair and error free, his innocence would render his execution unconstitutional). The Court observed that the former claim of innocence "need carry less of a burden" (*id.* at p. 316) than a constitutional claim of innocence, and thus the gateway claim of innocence should be subjected to a "more likely than not" standard rather than a clear and convincing standard (*id.* at pp. 326-327).

The Court then concluded that the appropriate standard for a gateway claim of actual innocence would require the petitioner to show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." (*Schlup*, *supra*, 513 U.S. at p. 327; accord, *McQuiggin*, *supra*, 569 U.S. at p. 399; *House v. Bell* (2006) 547 U.S. 518, 537 (*House*).) In reaching this conclusion, the Court explained that this standard "reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt," noting that "proof beyond a reasonable doubt marks the legal boundary between guilt and innocence." (*Schlup, supra*, 513 U.S. at p. 328.) It emphasized, however, that "[t]he meaning of actual innocence as formulated by [this standard] does not merely require a showing that a reasonable doubt

exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." (*Id.* at p. 329.)

In other words, "actual innocence" as used in a *Schlup* gateway finding is a finding that the petitioner could not be found guilty, beyond a reasonable doubt, of the crime in question and therefore is presumed innocent. But it is not a factual finding that the petitioner did not commit the crime in question. (See *House*, *supra*, 547 U.S. at p. 538 [in determining whether to allow a petitioner to pass through the *Schlup* gateway, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors"].) Indeed, the magistrate judge in Souliotes's case emphasized this in his findings (which were adopted by the district court), stating: "'[W]here post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the Schlup gateway to allow consideration of otherwise barred claims.' [Citations.] . . . [N]either conclusive proof of innocence or elimination of all evidence of guilt is necessary to pass through the Schlup gateway." And, in fact, the magistrate judge's ultimate finding underscores this understanding of "actual innocence": the magistrate judge found that "[t]he evidence remaining after the scientific evidence was removed is so weak it is insufficient to support a finding of [Souliotes's] guilt beyond a reasonable doubt. [Souliotes's] showing of innocence leaves this Court without confidence in the outcome of [Souliotes's] trial. [Citation.] The Court concludes [Souliotes] should pass th[r]ough the <u>Schlup</u> gateway."

25

2.    *"Factually Innocent"*

We turn now to the meaning of "factually innocent" as used in section 1485.55(a).  When construing a statute, "'[w]e first examine the words of the statute, "giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent."' [Citation.]  "'If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary."'" (*People v. Albillar* (2010) 51 Cal.4th 47, 55.)

Although the term "factually innocent" is not specifically defined in section 1485.55(a), the term is used in other subdivisions of section 1485.55 in a manner that explains its meaning in the context of section 4900 claims.  Subdivision (b) provides that if a court has granted a writ of habeas corpus or vacated a judgment under section 1473.6 or section 1473.7, subdivision (a)(2), "the person may move for a finding of factual innocence by a preponderance of the evidence that the crime with which they were charged was either not committed at all or, if committed, was not committed by the petitioner"; subdivision (c) provides that if a court finds that the petitioner "has proven their factual innocence by a preponderance of the evidence pursuant to subdivision (b)," the Board must recommend that the claim be paid without a hearing.  And subdivision (e) provides that the Board, also without a hearing, must recommend that a section 4900 claim be paid if, after granting a writ of habeas corpus, a federal court finds, "pursuant to a nonstatutory motion or request, finds a petitioner factually innocent by no less than a

26

preponderance of the evidence that the crime with which they were charged was either not committed at all or, if committed, was not committed by the petitioner."

There is no indication that "factual innocence" as used in subdivisions (b) and (c), or "factually innocent" as used in subdivision (e) is intended to have a different meaning from "factually innocent" as used in subdivision (a). Thus, we conclude that "factually innocent" as used in section 1485.55(a) means a finding, by a preponderance of the evidence, that the crime with which the section 4900 claimant was charged was either not committed at all or, if committed, was not committed by the claimant. (See *In re Bittaker* (1997) 55 Cal.App.4th 1004, 1009 ["similar words or phrases in statutes in pari materia ordinarily will be given the same interpretation"].)

This interpretation of "factually innocent" not only harmonizes the meaning of the term across all subdivisions of section 1485.55, but it also ensures that the statutory criterion for entitlement to compensation under section 4900 is met. Section 4900 permits a person to present a claim for compensation only if that person was "granted a pardon by the Governor for the reason that the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her, or who, being innocent of the crime with which he or she was charged for either of the foregoing reasons, shall have served the term or any part thereof for which he or she was imprisoned in state prison or incarcerated in county jail." (§ 4900; see also § 4903, subd. (a) [when a hearing is required, the claimant must "prove the facts set forth in the statement constituting the claim,

27

including the fact that the crime with which they were charged was either not committed at all, or, if committed, was not committed by the claimant"]; § 4904 ["If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant," the Board must recommend that the claim be paid].)[13]

Souliotes argues, however, that "factually innocent" as used in section 1485.55(a) must be understood in the context of what he contends is "a new standard for substantive factual innocence claims" that was created by the Legislature in 2016, when it enacted Senate Bill No. 1134 (Reg. Sess. 2015-2016) (S.B. 1134). That bill amended section 1473 to allow a writ of habeas corpus to be prosecuted based upon "[n]ew evidence . . . that is credible, material, presented without substantial delay, and of such decisive force and value that it would have more likely than not changed the outcome at trial." (§ 1473, subd. (b)(3)(A); Stats. 2016, ch. 785, § 1.) Although Souliotes refers to this

---

[13]    As the Attorney General points out, this interpretation also is consistent with the definition of "factual innocence" the Legislature declared (but did not codify) when enacting Assembly Bill No. 316 in 2009, which amended section 340.6 of the Code of Civil Procedure and sections 851.8, 4901, 4903, and 4904 of the Penal Code. As part of that enactment, the Legislature found and declared: "(a) It is the intent of the Legislature to remedy some of the harm caused to all factually innocent people who have been wrongfully convicted and served time in state prison in California. [¶] (b) *A factually innocent person is a person who was convicted of a crime that either was not committed or, if committed, was not committed by him or her.* [¶] (c) This act would remove some of the obstacles to compensation for the factually innocent and would ease their transition back into society." (Stats. 2009, ch. 432, § 1, italics added.)

basis for habeas relief as "factual innocence," that phrase is not used in section 1473.

S.B. 1134 also amended section 1485.55. (Stats. 2016, ch. 785, § 3.) Prior to its amendment, section 1485.55(a) reflected the standard that then applied in California state courts to habeas claims based upon actual innocence: habeas relief was available where the petitioner presented newly discovered evidence that ""undermine[d] the entire prosecution case and point[ed] unerringly to innocence or reduced culpability.""" (*In re Lawley* (2008) 42 Cal.4th 1231, 1239.) Thus, before it was amended, section 1485.55(a) provided that the Board must recommend payment of a claim without a hearing if a court granted a writ of habeas corpus or vacated a judgment on the basis of new evidence and if the court found "that new evidence on the petition points unerringly to innocence." (Former § 1485.55, subd. (a); Stats. 2013, ch. 800, § 3.) Former section 1485.55, subdivisions (b) and (c) then provided that, if the court granted a writ of habeas corpus or vacated a judgment "on any ground other than new evidence that points unerringly to innocence or actual innocence, the petitioner may move [the court] for a finding of innocence by a preponderance of the evidence that the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her." (Former § 1485.55, subds. (b), (c); Stats. 2013, ch. 800, § 3.) Former section 1485.55, subdivision (d) provided that "[i]f the court makes a finding that the petitioner has proven his or her innocence by a preponderance of the evidence pursuant to subdivision (b) or (c)," the Board must, without a hearing, recommend that the section 4900 claim

29

be granted. (Former § 1485.55, subd. (d); Stats. 2013, ch. 800, § 3.) Finally, as relevant here, the former provision regarding a grant of a habeas writ by a federal court stated: "If a federal court, after granting a writ of habeas corpus, pursuant to a nonstatutory motion or request, finds a petitioner innocent by no less than a preponderance of the evidence that the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her, the board shall, without a hearing, recommend to the Legislature that an appropriation be made and the claim paid pursuant to Section 4904." (Former § 1485.55, subd. (f); Stats. 2013, ch. 800, § 3.)

S.B. 1134 amended each of these subdivisions to use the term "factually innocent" or "factual innocence." Thus, it amended section 1485.55(a) to provide that the Board must recommend payment of a claim without a hearing if a court "has granted a writ of habeas corpus" or vacated a judgment pursuant to section 1473.6 and "the court has found that the person is factually innocent." (§ 1485.55(a); Stats. 2016, ch. 785, § 3.) The bill also amended former subdivisions (b), (c), (d), and (f) of section 1485.55 to add the word "factual" or "factually" before the word "innocence" or "innocent" as used in the former versions (the bill also made changes in subdivisions (b) and (c) to eliminate the references to "new evidence [that] points unerringly to innocence"). (Stats. 2016, ch. 785, § 3.) Thus, those post-amendment subdivisions referred to findings of "factual innocence by a preponderance of the evidence that the crime with which he or she was charged was either not committed

30

at all or, if committed, was not committed by him or her."[14] (Former § 1485.55, subds. (b), (c); Stats. 2016, ch. 785, § 3.)

Citing *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325 for the proposition that "'[w]here changes have been introduced to a statute by amendment it must be assumed the changes have a purpose'" (*id.* at p. 1337), Souliotes argues that by amending section 1485.55(a) to use the term "factually innocent" the Legislature must have intended to expand the scope of that subdivision from a narrow class of innocence findings—i.e., where "new evidence on the petition points unerringly to innocence" (former § 1485.55, subd. (a); Stats. 2013, ch. 800, § 3)—to "all habeas court determinations that a person is 'factually innocent,'" including *Schlup* gateway findings. While we have no doubt that the Legislature intended to broaden the class of innocence findings subject to section 1485.55(a), Souliotes goes too far by suggesting that the amendment of that provision necessarily expands the class to include *Schlup* gateway findings. For if *all* of the amendments made by S.B. 1134 are assumed to have a purpose, we must assume that by adding "factual" or "factually" before the terms "innocence" or "innocent" in subdivisions (b), (c), and (f) of former section 1485.55, the Legislature intended to provide a context to understand the meaning of "factually innocent" as used in section 1485.55(a), i.e., a finding, by a

---

[14] The post-amendment language of subdivision (f) of section 1485.55 was slightly different; it referred to a federal court finding the habeas petitioner "factually innocent by no less than a preponderance of the evidence that the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her." (Former § 1485.55, subd. (f); Stats. 2016, ch. 785, § 3.)

31

preponderance of the evidence, that the crime for which the person was convicted either was not committed or, if committed, was not committed by him or her.

We understand that the sponsors of S.B. 1134 may have intended the bill to amend section 1485.55 to require the Board, without holding a hearing, to recommend the grant of compensation for a section 4900 claim to a person who had obtained a finding by a habeas court that it is more likely than not that a jury would not find the person guilty beyond a reasonable doubt. But S.B. 1134 did not accomplish this. We are bound by the *expressed* language of the Legislature's enactment. As our Supreme Court has warned, "'[t]his court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.'" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633.) Accordingly, we conclude (as we must) that section 1485.55(a) applies only when a court has granted a writ of habeas corpus and found by a preponderance of the evidence that the crime for which the person at issue was charged either was not committed at all or, if committed, was not committed by that person.

### 3. *Conclusion*

Having determined the meaning of "actual innocence" as used in a *Schlup* gateway finding and the meaning of "factual innocence" as used in section 1485.55(a), it is clear the two terms are not interchangeable. The *Schlup* gateway finding is based upon whether the evidence is such that no juror could find the person guilty beyond a reasonable doubt.

But the finding referenced in section 1485.55(a) is based upon whether the evidence shows either that no crime was actually committed or that the person did not actually commit it. While we are not unsympathetic to those who, like Souliotes, obtained a finding of "innocence" under *Schlup* but must reprove their "innocence" under a different standard in order to obtain compensation, we are bound by the language the Legislature chose to enact. Therefore, we conclude that a *Schlup* gateway finding does not constitute a finding that a person is "factually innocent" that is binding on the Board under section 1485.55(a) and requires the Board to recommend, without a hearing, that a section 4900 claim be paid.

C.    *Is the Board Bound by the Factual Findings and Credibility Determinations From the <u>Schlup</u> Gateway Determination?*

There are two statutes that address the binding effect on the Board of factual findings and credibility determinations made by a habeas court: section 4903 and section 1485.5. Section 4903(b) provides, in relevant part: "In a hearing before the board, the factual findings and credibility determinations establishing the court's basis for granting a writ of habeas corpus . . . shall be binding on the Attorney General, the factfinder, and the board." Section 1485.5(c) contains similar, but not identical language. It provides, in relevant part: "In a contested or uncontested proceeding, the express factual findings made by the court, including credibility determinations, in considering a petition for habeas corpus . . . shall be binding on the Attorney General, the factfinder, and the California Victim Compensation Board."

33

(§ 1485.5(c).) Section 1485.5(d) further explains: "For the purposes of this section, 'express factual findings' are findings established as the basis for the court's ruling or order."

As noted, in ruling on Souliotes's petition for writ of administrative and traditional mandamus, the trial court found that the Board is bound by the "express factual findings" and credibility determinations relied upon by the federal district court to grant Souliotes's petition for writ of habeas corpus, but not those relied upon by the district court solely for the *Schlup* gateway finding. Souliotes contends the trial court erred in its interpretation of the statutes at issue. He argues that since section 1485.5(d) does not specify which ruling or order section 1485.5 applies to, and since section 1485.5(c) refers to findings and determinations made by the court in *considering*—not just granting—a petition for habeas corpus, the statute must be interpreted to include the findings and determinations made by the court in ruling on the *Schlup* gateway issue because resolution of that issue was a necessary part of the court's consideration of Souliotes's habeas petition.

We disagree. First, although the Legislature used slightly different language in the two statutes, we see no discernable difference in their meaning. Second, even if the statutes could be found to have different meanings, we conclude that a *Schlup* gateway ruling is not a ruling the district court makes "in considering a petition for habeas corpus."

34

1.  *The Statutes Do Not Prescribe Different Standards For Determining Which Findings Are Binding on the Board*

The difference in the language used in section 4903(b) and the language used in sections 1485.5(c) and 1485.5(d) is one of approach rather than meaning. Section 4903(b) is concise and straightforward, and needs no explanation: the court's factual findings and credibility determinations that establish the basis for its ruling granting a writ of habeas corpus are binding on the Board. Sections 1485.5(c) and 1485.5(d) reach the same result, but require some reasoning to get there.

Although section 1485.5(c) refers to findings made by the court in considering a petition for habeas corpus, section 1485.5(d) makes clear that the relevant findings are those that establish the basis for the court's ruling or order. Since a court "considers" a petition for writ of habeas corpus for the purpose of determining the merits of the claims, the court's ruling or order upon consideration of the petition logically can only mean to grant or deny it. Thus, under sections 1485.5(c) and 1485.5(d), the Board is bound by factual findings and credibility determinations made by the court that establish the basis for the grant of a petition for writ of habeas corpus.

The legislative history of the sections 4903(b), 1485.5(c), and 1485.5(d) supports our conclusion that despite the slight difference in language, the Legislature did not intend different meanings. All three sections were enacted in the same bill, Senate Bill No. 618 (2013-2104 Reg. Sess.). As originally introduced in the bill, section 1485.5 provided that "factual findings, including credibility determinations, of the court

35

granting the writ [of habeas corpus] or reversing the conviction" were binding on the Board, and section 4903 referred to section 1485.5 regarding the effect of those findings. (Sen. Bill No. 618 (2013-2014 Reg. Sess.) as introduced Feb. 22, 2013, §§ 1, 5.)

The bill was amended in the Senate to replace the language of section 1485.5 as introduced with language similar to that currently found in section 1485.5(c), referring to "[f]actual findings made by the court . . . in considering a habeas petition"; section 4903 continued to refer to section 1485.5 regarding the effect of the findings. (Sen. Amend. to Sen. Bill No. 618 (2013-2014 Reg. Sess.) Apr. 15, 2013, §§ 2, 7.) The bill was then amended by the Assembly, which did not change the language of section 1485.5 but amended section 4903 to replace its reference to section 1485.5 with "The factual findings and credibility determinations underlying the granting of a writ of habeas corpus . . . shall be binding on the Attorney General, the factfinder, and the board." (Assem. Amend. to Sen. Bill No. 618 (2013-2014 Reg. Sess.) June 27, 2013, § 7.)

Finally, the bill was amended again by the Senate, which made changes to both section 1485.5 and 4903. The amendment changed the previous reference to "factual findings" in section 1485.5 to "the express factual findings" and added section 1485.5(d) to provide the definition of "express factual findings" that remains in the current statute ("findings established as the basis for the court's ruling or order"). (Sen. Amend. to Sen. Bill No. 618 (2013-2014 Reg. Sess.) Sept. 3, 2013, § 2.) At the same time, the Senate also amended section 4903 to change "findings . . . underlying the granting of a writ of habeas corpus" to "findings . . .

36

establishing the court's basis for granting a writ of habeas corpus."
(Sen. Amend. to Sen. Bill No. 618 (2013-2014 Reg. Sess.) Sept. 3, 2013,
§ 7.)  The amendment also amended the Legislative Counsel's Digest to
add:  "The bill would require, in a hearing before the board, that the
factual findings and credibility determinations establishing the court's
basis for granting the writ of habeas corpus, a motion for new trial, or
an application for a certificate of factual innocence be binding on the
Attorney General, the factfinder, and the board."  (Sen. Amend. to Sen.
Bill No. 618 (2013-2014 Reg. Sess.) Sept. 3, 2013.)  The bill was enacted
without further changes to the relevant language.  (Stats. 2013, ch. 800,
§§ 2, 7.)

Although sections 1485.5 and 4903 underwent subsequent
amendments in the years that followed, the language relevant to the
issue before us did not change.  Given the fact that, as originally
introduced, the two statutes' treatment of the factual findings and
credibility determinations were expressly tied to one another, and that
as those sections were amended parallel changes were made to both, it
is evident that the Legislature intended that both sections be
interpreted to mean the same thing, i.e., that only the factual findings
and credibility determinations establishing the basis for the court's
granting a writ of habeas corpus are binding on the Board.

2.    *A Schlup Gateway Finding is Not Part of the Court's
      Consideration of a Petition For Writ of Habeas Corpus*

Even if the statutes could be found to have different meanings, we
conclude that a *Schlup* gateway ruling is not a ruling the district court

makes "in considering a petition for habeas corpus." While Souliotes is correct that the district court could not have granted the habeas petition without first making the *Schlup* gateway finding, that finding necessarily could not have been a part of the court's consideration of the petition. The entire—and only—purpose of the *Schlup* gateway proceeding is to determine whether the district court will consider a habeas petition that is procedurally barred. (*McQuiggin, supra,* 569 U.S. at p. 386 [in *Schlup* and its progeny, "a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims" asserted in the petition.) Thus, the factual findings and credibility determinations made by the court in ruling that Souliotes could pass through the *Schlup* gateway are not findings that establish the basis for the court's ruling or order in considering his habeas petition.

In short, the trial court did not err in ruling that the Board is bound by the factual findings and credibility determinations that established the basis for the federal district court's grant of Souliotes's habeas petition, but that the Board is not bound by the factual findings and credibility determinations from the district court's order allowing Souliotes to pass through the *Schlup* gateway.

//

//

//

//

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                                      WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.